UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE F.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, et al., <br><br> Defendants. | Case No. 23-cv-06322-TSH <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 14, 19 |

## I.   INTRODUCTION

Plaintiff Melanie F. moves for summary judgment to reverse the decision of Defendant Martin O'Malley, Commissioner of Social Security, denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 14.  Defendant cross-moves to affirm.  ECF No. 19.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion.[2]

## II.   PROCEDURAL HISTORY

On April 13, 2020, Plaintiff filed an application for disability benefits under Title II of the Social Security Act, with an alleged onset of disability as of July 1, 2018.  Administrative Record ("AR") 399, 583-89.  Following denial at the initial and reconsideration levels, Plaintiff requested

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 7, 8.

1 a hearing before an Administrative Law Judge ("ALJ"). AR 435, 441, 444. An ALJ held a
2 hearing on July 5, 2022 and issued an unfavorable decision on February 27, 2023. AR 56-66. The
3 Appeals Council denied Plaintiff's request for review on October 17, 2023. AR 1-7. Plaintiff now
4 seeks review pursuant to 42 U.S.C. § 405(g).

### III. ISSUES FOR REVIEW

6 Plaintiff raises four issues on appeal: (1) the ALJ erred in his analysis at step three; (2) the
7 ALJ erred in discrediting her statements; (3) the ALJ's medical opinion findings were not
8 supported by substantial evidence; and (4) the ALJ erred in not incorporating third party
9 testimony.

### IV. STANDARD OF REVIEW

11 42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision
12 to deny disability benefits, but "a federal court's review of Social Security determinations is quite
13 limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's
14 decision will be disturbed only if it is not supported by substantial evidence or if it is based on the
15 application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but
16 only "such relevant evidence as a reasonable mind might accept as adequate to support a
17 conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard,
18 which is "not high," the Court looks to the existing administrative record and asks "whether it
19 contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned
20 up).

21 The Court "must consider the entire record as a whole, weighing both the evidence that
22 supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm
23 simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d
24 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility,
25 resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation
26 omitted). If "the evidence can reasonably support either affirming or reversing a decision," the
27 Court must defer to the ALJ's decision. *Id.* (citation omitted).
28 Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is

harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since July 1, 2018. AR 59.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled.

3

1   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

2   impairments: major depressive disorder; generalized anxiety disorder; borderline personality

3   disorder; and alcohol abuse, episodic.  AR 59.

4   At step three, the ALJ evaluates whether the claimant has an impairment or combination of

5   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

6   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

7   describe impairments that are considered "to be severe enough to prevent an individual from doing

8   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

9   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

10  "For a claimant to show that his impairment matches a listing, it must meet all of the specified

11  medical criteria.  An impairment that manifests only some of those criteria, no matter how

12  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

13  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

14  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

15  age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

16  did not have an impairment or combination of impairments that meets the listings.  AR 59.

17  If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

18  the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

19  despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

20  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

21  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

22  it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

23  perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

24  determined Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can maintain attention and concentration for 2 hour segments before and after the normal morning, lunch and afternoon breaks; she can work in proximity to others without distracting them or being distracted by them; she cannot tolerate demanding work pressures such as high volume output, very short deadlines, or high levels of precision; she can get

>along with coworkers and respond to criticism from supervisors without exhibiting behavioral extremes such as an anger outburst or leaving the worksite; and she can tolerate occasional interaction with coworkers and supervisors and no interaction with the public.

AR 61. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work. AR 64.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4] *Id.* Here, the ALJ determined there are jobs that exist in significant numbers in the national economy Plaintiff can perform, including

- Laundry Worker II (DOT 361.685-018), medium exertion, unskilled with an SVP of 2, with approximately 28,500 jobs available in the national economy.

- Linen Room Attendant (DOT 222.387-030), medium exertion, unskilled with an SVP of 2, with approximately 27,800 jobs available in the national economy.

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The DOT classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

1        • Wrap Sorter (DOT 509.686-018), medium exertion, unskilled with an SVP of 2, with approximately 47,300 jobs available in the national economy.

AR 65. As such, the ALJ determined Plaintiff is not disabled. AR 66.

### B.   Step Three

Plaintiff first argues the ALJ's findings at step three are not supported by substantial evidence. Pl.'s Mot. at 2-6.

#### 1.   Legal Standard

At step three, the ALJ considers whether the claimant meets or equals a listed impairment. 20 C.F.R. § 416.920a(d)(2). "A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1526). Further, "[t]he mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P, § 4.12 is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not quality." *Sullivan*, 493 U.S. at 530.

In determining whether a claimant with a mental impairment meets a listed impairment, the ALJ must follow a special technique to evaluate the claimant's symptoms and rate their functional limitations. 20 C.F.R. § 404.1520a(a). The specified medical criteria are broken up into three categories: "paragraph A" criteria, "paragraph B" criteria, and "paragraph C" criteria. 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00. The ALJ must consider: (1) whether specific diagnostic criteria are met (paragraph A criteria); and (2) whether specific impairment-related functional limitations are present (paragraph B and paragraph C criteria). 20 C.F.R. § 404.1520a(b). The criteria in paragraph A substantiate medically the presence of a particular mental disorder and differ depending on the particular listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(a). The criteria in paragraphs B and C, on the other hand, describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity.

The listings corresponding to Plaintiff's mental impairments were: 12.04 (Depressive and Bipolar Disorders), 12.06 (Anxiety Disorders), and 12.08 (Personality and Impulse-Control

Disorders). AR 59-60.

To meet or equal listing 12.08, a claimant must satisfy paragraphs A and B. 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(A)(2). To meet or equal listing 12.04 and 12.06, a claimant must satisfy (1) paragraphs A and B, or (2) paragraphs A and C. *Id.* To satisfy the paragraph B criteria, a claimant's mental disorder must result in an "extreme" limitation of one area, or "marked" limitation of two of the following four areas, of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

"The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1). Specifically, the paragraph C criteria provide an alternative means of demonstrating disability for those claimants who experience "serious and persistent mental disorders" but whose "more obvious symptoms" have been controlled by medication and mental health interventions. *Id.* To satisfy the paragraph C criteria, a claimant must show his mental impairment has existed for at least two years and that (1) he relied, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder," and (2) despite his diminished symptoms and signs of his mental disorder, he has achieved only "marginal adjustment," meaning "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)-(c).

**2.   Analysis**

    **a.   Paragraph B Criteria**

The ALJ found moderate or less severe limitation in all four areas of mental functioning. AR 60. In understanding, remembering or applying information, the ALJ found Plaintiff has no limitation. *Id.* In making this finding, the ALJ relied on the opinions of the state agency consultants, Dr. Scott Kaper and Dr. Irmgard Friedburg, who also found no limitation in this area. *Id.* (citing AR 399-408, 410-26). In interacting with others, the ALJ found Plaintiff has a moderate limitation, again relying on Dr. Kaper's and Dr. Friedburg's opinions. *Id.* With regard

1  to concentrating, persisting or maintaining pace, the ALJ found Plaintiff has a mild limitation.  *Id.*
2  The ALJ noted that Dr. Kaper and Dr. Friedburg found a moderate limitation in this area, but he
3  found their opinions unpersuasive, noting "there is little evidence of difficulty in this area."  *Id.*
4  As for adapting or managing oneself, the ALJ found Plaintiff has experienced a moderate
5  limitation.  *Id.*  The ALJ noted that Dr. Kaper and Dr. Friedburg found a mild limitation in this
6  area, but he noted that "[v]iewing the record in the light most favorable to" her, Plaintiff "has been
7  reported to be somewhat disheveled and had been hospitalized for mental health treatment."  *Id.*
8  As such, because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or
9  one 'extreme' limitation," the ALJ found the paragraph B criteria are not satisfied.  *Id.*

10  Plaintiff argues the ALJ erred in making this finding because he "relied entirely on the
11  opinions of the state agency consultants who reviewed only a fraction of the medical evidence in
12  the case," and he "failed to cite a single other piece of actual evidence."  Pl.'s Mot. at 3.
13  Defendant contends Plaintiff relies on "her own belief" in asserting that her impairments caused
14  more than moderate limitations in the paragraph B criteria of the mental impairment listings.
15  Def.'s Mot. at 6.

16  "To determine whether substantial evidence supports the ALJ's determination, [the Court]
17  must assess the entire record, weighing the evidence both supporting and detracting from the
18  agency's conclusion."  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v.*
19  *Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)).  When performing this analysis, the Court must
20  "consider the entire record as a whole and may not affirm simply by isolating a specific quantum
21  of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation
22  and quotation marks omitted).

23  As to interacting with others, throughout the record there are reports by providers at
24  different medical facilities reporting inappropriate behavior, irritability, and disturbing obsessions
25  with people or interpersonal conflict.  Pl.'s Mot. at 4 (citing AR 202, 204, 211, 247, 761, 764, 816-
26  17, 849, 948, 943, 952, 1021, 1089, 1101, 1107, 1109, 1165, 1167, 1120, 1173, 1189, 1238, 1240,
27  1265).  It is not clear if the ALJ considered any of this evidence in his determination that Plaintiff
28  was only moderately limited in this domain.  As to concentration, persistence or pace, Plaintiff

8

consistently reported difficulty with concentration and with persistence. *Id.* (citing AR 346, 762, 768, 783, 776, 951). Even if there is insufficient evidence that her concentration was more than mildly impacted, Plaintiff maintains the record includes evidence of an impairment in persistence as a result of her obsessive ruminations distracting her from tasks and impeding her ability to persist. *Id.* (citing AR 1067, 1076, 1120, 1156, 1195). Again, it is unclear if the ALJ considered this evidence. As to adapting or managing oneself, Plaintiff points to her suicidal attempts and several hospitalizations and inpatient treatment programs. *Id.* (citing AR 10, 211, 240, 255, 1270). Her symptoms were seen to be exacerbated by stress, and she decompensated on several occasions, particularly in relation to interpersonal relationship issues. *Id.* (citing AR 202, 204, 211, 247, 761, 764, 816-17, 849, 948, 943, 952, 1021, 1089, 1101, 1107, 1109, 1165, 1167, 1120, 1173, 1189, 1238, 1240, 1265).

In his cross-motion, Defendant argues "[i]t is understandable why Plaintiff does not like the ALJ's finding but her argument lacks merit because the evidence simply does not show that she met or equaled the high threshold of these listings, or any listing." Def.'s Mot. at 5. He maintains "the only doctors who directly addressed these limitations, found that she had no more than moderate limitations in any of the four b criteria categories, just as the ALJ found." *Id.* at 6 (citing AR 403, 418). However, as shown above, Plaintiff detailed extensive evidence from the record supporting greater than moderate limitations in at least two areas of mental functioning, specifically noting that the ALJ erred in ignoring this evidence in favor of relying exclusively on the opinions of the non-examining state agency medical consultants. Despite Defendant's claims, this evidence cannot reasonably be characterized as "isolated" (see Def.'s Mot. at 6), nor was it permissible for the ALJ to ignore that evidence in evaluating the degree of Plaintiff's limitations. The record contains evidence supporting more than moderate limitations in the paragraph B criteria. As such, because the ALJ may not "isolat[e] a specific quantum of supporting evidence" to make a decision, the ALJ erred in his step three analysis by failing to consider this evidence. *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).

### b. Paragraph C Criteria

The ALJ stated he "has also considered whether the 'paragraph C' criteria are satisfied. In

this case, the evidence fails to establish the presence of the 'paragraph C' criteria." AR 60. However, he provides no analysis in support of this finding.

Plaintiff argues the medical evidence demonstrates she meets this criteria. Pl.'s Mot. at 5. She maintains she "has serious and persistent mental disorders that have lasted at least two years, and she has relied upon ongoing mental health treatment, including inpatient care to treat her 'more obvious symptoms' such as suicidal ideation." *Id.* (citing AR 808, 819-820, 950, AR 761, 766, 812, 829, 870). She notes she "has consistently been found to have limited or poor insight and judgment, and only marginal adjustment such that any triggers or additional demands – particularly in the realm of interacting with others – cause a decompensation in her condition. This is apparent in the records detailing her response to being fired (AR 761, 773), being left by a romantic partner (AR 255, 258), being in group therapy (AR 948, 1012, 1236), perceived slights by her adviser (AR 204, 1089, 1091), and conflicts with medical providers when she felt challenged or slighted by them (AR 145, 1066, 1112, 1120, 1122)." *Id.* at 5-6.

Defendant does not address the paragraph C criteria in his cross motion, thereby conceding Plaintiff's arguments on this ground. *See Lou v. JP Morgan Chase Bank N.A.*, 2018 WL 1070598, at *2 (N.D. Cal. Feb. 26, 2018) ("Courts have found that a failure to oppose an argument serves as a concession."); *Marziano v. Cty. of Marin*, 2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010) ("[T]he Court views Ms. Marziano's failure to oppose the argument as a concession that . . . the claim should be dismissed."); *Needham v. Berryhill*, 2019 WL 5626641, at *18 (N.D. Cal. Oct. 31, 2019) (finding ALJ's paragraph C analysis insufficient because it was unclear as to which part of the paragraph C analysis its prior discussion of the medical evidence applied). Regardless, even considering Plaintiff's argument on the merits, the Court finds the ALJ erred by offering only a boilerplate statement that the evidence "fails to establish the presence of the paragraph C criteria" with no citation or reference to the criteria itself or to any evidence. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) ("A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet a listing.); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusions" so that the court "may afford the claimant meaningful review of the SSA's ultimate findings"). It

1 is not possible to ascertain from the ALJ's cursory statement which requirement(s) of paragraph C he concluded were not met, and thus, the ALJ erred. *See Needham*, 2019 WL 5626641, at *19 (finding ALJ's paragraph C analysis insufficient because it was unclear as to which part of the paragraph C analysis its prior discussion of the medical evidence applied).

### C. Medical Opinions

Plaintiff next argues the ALJ's findings about support and consistency regarding the medical opinions were not based on substantial evidence. Pl.'s Mot. at 9-11.

#### 1. Legal Standard

When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at "face value." *Ford*, 950 F.3d at 1155. "Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. Jan. 5, 2024) (citing *Ford*, 950 F.3d at 1155). For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of the medical opinion using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c. *See Woods v. Kijakazi*, 32 F.4th 785, 791-93 (9th Cir. 2022). These regulations "provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinions." *Cross*, 89 F.4th at 1214 (quoting 20 C.F.R. § 416.920c(a)). "Instead, ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'" *Id.* (quoting 20 C.F.R. § 416.920c(b)(2)).

The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

11

1      "An ALJ may discuss other factors, such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (quoting 20 C.F.R. § 416.920c(b)(2)). "Only if the ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record' must the ALJ then articulate how he or she considered these other factors." *Id.* (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)–(5)).

     Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion." *Woods*, 32 F.4th at 787. Rather, the ALJ's decision must "simply be supported by substantial evidence." *Id.* "Even under the revised regulations, however, 'an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.'" *Cross*, 89 F.4th at 1214 (quoting *Woods*, 32 F.4th at 792).

    **2.**     **Analysis**

         **a.**     **State Agency Consultants**

     In assessing the opinions of Drs. Kaper and Friedburg, Plaintiff argues "the ALJ failed to provide any context or analysis other than to state that they 'effectively' limited the claimant to his RFC finding and that their opinions were 'generally consistent' with the 'longitudinal mental (sic) evidence.'" Pl.'s Mot. at 9 (citing AR 63). Defendant argues the ALJ correctly found their assessments persuasive "because they were 'generally consistent with the preponderance of the longitudinal mental evidence of record as a whole'" and "'consistent with [the doctors'] expertise and familiarity with program knowledge.'" Def.'s Mot. at 7-8 (citing AR 63). The Court agrees with Plaintiff.

     Dr. Kaper's opinion consisted of a finding that Plaintiff would be limited to simple, routine tasks with only occasional interaction with coworkers and general public and a "tactful supervisor to assign tasks and give critical feedback," as he found a moderate limitation in the ability to "accept instructions and respond appropriately to criticism from supervisors." AR 406. He also found a moderate limitation in the ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id.* The ALJ provided no reasoning for discrediting

12

these limitations from what he found to be a "persuasive" opinion. AR 63. This alone was erroneous as these opinions directly contradict the ALJ's RFC finding. *Compare* AR 406 with AR 61. Additionally, Dr. Kaper made his opinion in June 2020, which means he did not have the benefit of reviewing the majority of the treatment records, including the notes and opinion of Plaintiff's treating therapist, Jacqueline Gibb. AR 406; *see* AR 402 (summarizing records up to March 2020).

Dr. Friedburg provided an identical opinion at the reconsideration stage of the case. AR 418-22. However, as with Dr. Kaper, Dr. Friedburg, whose opinion is dated January 2021, did not have the benefit of reviewing Plaintiff's subsequent testimony and the majority of the treatment records, including Dr. Gibb's notes and opinion. Defendant argues "there does not appear to be any incompatibilities between the doctors' opinions" and the RFC, and that the ALJ rationally translated the doctors' opinions into a succinct RFC. Def.'s Mot. at 8. However, nowhere in the RFC finding by the ALJ is there any limitation relating to the need for feedback to be provided in a tactful manner, and it is unclear whether the State agency consultants considered Plaintiff's Borderline Personality Disorder and the impact it could have on her ability to react appropriately to stress or supervision. AR 61, 403-04. Regardless, the ALJ failed to provide any reasoning or even acknowledge that he was not incorporating the actual limitations opined. AR 63, 422. The ALJ specifically found Plaintiff has no limitations in "get[ting] along with coworkers . . . without exhibiting behavioral extremes" (AR 61), directly contradicting the conclusions of Drs. Kaper and Friedberg that she would have moderate limitations in that area. AR 406, 422. The ALJ also did not offer any reasons for excluding these limitations from the RFC. AR 61. This is not a case where the ALJ "translated" a limitation, as there is no interpreting a "moderate" limitation in a specific task (i.e., "accepting supervision" or "get along with coworkers or peers without distracting them or exhibiting behavioral extremes") into an affirmative statement that there is no limitation in that specific ability. AR 61, 406, 422.

    **b.**   **Therapist Jacqueline Gibb**

Plaintiff was treated by Jacqueline Gibb, LMHC from January through April 2022. AR 1083-1120. Ms. Gibb noted consistent problems with follow-through or persistence, even for

1  things requested and needed such as a letter for student financial services. AR 1120-21. Ms. Gibb
2  also opined that Plaintiff's medication and therapy were not sufficiently addressing her symptoms.
3  *Id.* Ms. Gibb's opinion that Plaintiff's "disorganized thinking, insomnia, mood instability, labile
4  moods, and distorted thinking" would cause marked to extreme limitations in her ability to
5  "sustain employment" "without her distorted beliefs and thoughts sabotaging herself about how
6  other people perceive her." AR 1121. The ALJ found Ms. Gibb's opinion was "not persuasive"
7  because it is inconsistent "with the mental health treatment notes, viewed in its totality and
8  significantly out of proportion with the treatment record and the level of activity engaging by the
9  claimant." AR 64. The ALJ also found it was inconsistent with Plaintiff's "significant work
10 activity, albeit at multiple jobs," and her activities of daily living, "including care for her cate [sic],
11 making simple meals, doing the dishes and taking out the trash . . . . She goes out several hours
12 each day, walks, uses public transportation, shops and goes out with friends before Covid." *Id.*

13    Plaintiff argues these activities "in no way contradict or are inconsistent with Ms. Gibb's
14 opinion and the ALJ does not explain in what way this opinion is inconsistent with the mental
15 health records." Pl.'s Mot. at 11. Plaintiff also argues Ms. Gibb's opinion "was consistent with
16 the treatment notes and the longitudinal records showing difficulty interacting in group sessions,
17 accepting directions from medical providers without significant behavioral issues and irritability,
18 and her inability to maintain employment." *Id.* (citing AR 37-38, 145, 202, 204, 247, 256, 316,
19 760, 761, 773, 764-65, 816-17, 820, 766, 851, 942-43, 899, 948, 989, 998, 1089, 1091, 1094,
20 1098-89, 1101, 1107, 1112, 1119, 1167, 1184, 1189, 1236, 1238, 1240, 1242, 1265). Plaintiff also
21 notes Ms. Gibb's opinion was supported by her own notes and observations. *Id.*

22    In response, Defendant argues substantial evidence supports the ALJ's evaluation of Ms.
23 Gibb's opinion. Def.'s Mot. at 8-9. He notes Ms. Gibbs "only worked with Plaintiff a few months
24 and in that short time, she had numerous cancellations," and that "[a] reasonable mind can
25 understand that this limited time with Plaintiff created some questions about reliability of the
26 assessment." *Id.* at 9 (citing AR 63). Defendant further argues the opinion was not consistent
27 with other mental health treatment notes in the record or Plaintiff's activity level. *Id.* Defendant
28 states that "[e]ven if Plaintiff's position has merit, which the Commissioner does not concede that

14

it does, the ALJ's cited evidence was still reasonable." *Id.* The Court disagrees.

Initially, the Court notes that Defendant's response regarding the supportability of Ms. Gibbs's opinion offers post hoc rationalizations for the ALJ's opinion, connecting the ALJ's observation that Plaintiff cancelled numerous therapy sessions with Ms. Gibb due to her symptoms with the ALJ's supportability conclusions, when the ALJ drew no such connection. Defendant also cites Plaintiff's enrollment in graduate school as a fact undermining Ms. Gibb's opinion, Def.'s Mot. at 9, but the ALJ did not connect the two in his decision. As such, these are not justifications the Court may consider. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (The court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations.").

With regard to consistency, Defendant argues the ALJ's characterization of Plaintiff's activities and work attempts was "reasonable" and adequate to establish inconsistency between Ms. Gibb's opinion and the evidence of record. Def.'s Mot. at 9. However, the Court must determine whether the ALJ's interpretation of the evidence is an accurate portrayal of the record as a whole and not merely isolated findings devoid of the bigger picture. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015). It is unclear, both from the ALJ's decision and Defendant's motion, how Plaintiff's activities and failed attempts to work were inconsistent with Ms. Gibb's opinion. The ALJ erred by failing to address the consistency of the medical opinions with the factual evidence in the record. *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). Further, Defendant did not rebut Plaintiff's contention that Ms. Gibb's opinion was supported by her own notes and observations, evidently conceding this point. *See Lou*, 2018 WL 1070598, at *2; *Marziano*, 2010 WL 3895528, at *4.

### D. Remaining Arguments

Plaintiff raises two additional arguments: (1) the ALJ failed to provide clear and convincing reasons or to consider the entire case record in finding her testimony about the severity

15

and frequency of symptoms was not credible; and (2) the ALJ erred in dismissing the third-party witness report of her boyfriend. As these portions of the ALJ's decision rely heavily on findings regarding the medical opinions in this case, the Court does not resolve those issues here because, as discussed below, remand is appropriate. However, the ALJ must address them on remand and determine whether reconsideration is required based on reconsideration of the step three analysis and medical opinions.

### E. Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled. Accordingly, remand for further proceedings is appropriate.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion. This matter is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of

Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: August 1, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge